OPINION
{¶ 1} Defendant-appellant, Mustafa Muhammad ("appellant"), appeals from his convictions of aggravated robbery and having a weapon under disability. He assigns four errors for our consideration:
 [I.] THE TRIAL COURT ERRED WHEN IT VIOLATED THE DEFENDANT'S CONSTITUTIONAL RIGHTS TO COMPULSORY PROCESS AND TO PRESENT A DEFENSE WHEN IT REFUSED TO ALLOW THE DEFENDANT TO CALL, AS HIS WITNESSES FOR AN INSANITY DEFENSE, PSYCHOLOGICAL EXPERTS WHO HAD EXAMINED AND *Page 2 
EVALUATED HIM AND WHEN IT RULED THAT THE DEFENDANT COULD NOT ASK ANY QUESTIONS OF HIS LAY WITNESSES RELATED TO HIS SANITY AT THE TIME OF THE OFFENSE.
 [II] THE TRIAL COURT ERRED WHEN IT FAILED TO CHARGE THE JURY ON THE DEFENSE OF INSANITY. THIS RULING HAD THE EFFECT OF A DIRECTED VERDICT AGAINST THE DEFENDANT, WHICH IS PROHIBITED IN CRIMINAL CASES, AND THE RULING DEPRIVED THE DEFENDANT OF HIS RIGHT TO A JURY TRIAL AND TURNED THE ENTIRE PROCEEDINGS INTO NOTHING MORE THAN A PROTRACTED GUILTY PLEA.
 [III] THE TRIAL COURT ERRED WHEN IT IMPOSED COURT COSTS UPON THE DEFENDANT IN THE JUDGMENT ENTRY WHEN IT DID NOT IMPOSE COSTS UPON THE DEFENDANT DURING THE SENTENCING PROCEEDINGS WHERE THE DEFENDANT WOULD HAVE HAD AN OPPORTUNITY TO OBJECT ON THE BASIS OF HIS INDIGENCY.
 [IV] THE TRIAL COURT ERRED WHEN IT NEGLECTED TO MAINTAIN THE DEFENDANT'S EVALUATIONS OF HIS COMPETENCY AND HIS SANITY AT THE TIME OF THE OFFENSE AS PART OF THE RECORD IN THIS CASE.
 {¶ 2} The State of Ohio has admitted error with respect to the assessment of court costs.
 {¶ 3} The third assignment of error is sustained.
 {¶ 4} The parties have been granted leave to supplement the record with the reports regarding appellant's competency and sanity. The reports are now part of the appellate record.
 {¶ 5} The fourth assignment of error is, therefore, moot and hence overruled.
 {¶ 6} The first and second assignments of error both address issues related to appellant's sanity at the time of the offenses and the trial court's rulings related to *Page 3 
appellant's attempts to put an insanity defense before the jury. Because the assignments of error heavily overlap, they will be addressed together.
 {¶ 7} Questions about appellant's mental health were presented before trial commenced. A competency evaluation was performed by a Ph.D psychologist affiliated with Netcare Forensic Psychiatry Center, Christopher L. Ray. Dr. Ray found appellant to be suffering from Bereavement, which can present symptoms resembling a major depression episode. The Bereavement was related to police shooting and killing appellant's brother earlier in the year. Dr. Ray also found appellant had been diagnosed as suffering from Antisocial Personality Disorder.
 {¶ 8} Due to appellant's history of substance abuse, Dr. Ray also found appropriate diagnoses of Alcohol Abuse, Cannabis Abuse and Cocaine Abuse. Dr. Ray saw these as inappropriate responses to the grief associated with the death of appellant's brother.
 {¶ 9} Dr. Ray found appellant competent to stand trial.
 {¶ 10} After appellant entered a plea of not guilty by reason of insanity, Dr. Ray performed an evaluation to determine appellant's sanity at the time the aggravated robbery occurred.
 {¶ 11} In Ohio, the issue of legal insanity is limited to the question of whether at the time of the offense, the defendant, as the result of a severe mental disease or defect, did not know the wrongfulness of the defendant's acts charged. See for instance, R.C. 2945.371(G)(4). *Page 4 
 {¶ 12} Dr. Ray found no mental defect, but found mental disease of depressive symptoms consistent with Bereavement, as well as Antisocial Personality Disorder. Dr. Ray's report of the evaluation includes information about a statement appellant gave at the time of his arrest in which appellant denied having a mental illness and his expectation of getting a 30 year prison sentence because of his extensive prior record and his possession of a firearm. However, appellant also indicated that what he had done was partly done in hopes that police would shoot him, commonly referred to as "suicide by cop." The report includes also the statement of Amy Dillon, appellant's girlfriend, that appellant had been grieving over the death of his brother and had snapped because he could not handle the pressure.
 {¶ 13} The videotape of appellant's statement to police at the time of his arrest minutes after the robbery showed appellant to be alert and oriented to person, place and time.
 {¶ 14} Dr. Ray performed some standard psychological testing which indicated that appellant had suffered from "severe depression and he seemed to be depressed to the point of feeling desperate when the events in question took place." (Psychological Evaluation, at 23.) The tests also indicated "a relatively complete awareness of the criminality of the act with a general understanding of the possible penalties." Id. At the same time, Dr. Ray found symptoms which resemble a major depressive episode along with dynamics consistent with Antisocial Personality Disorder. However, Dr. Ray clearly reported repeatedly that appellant had known the wrongfulness of his acts. *Page 5 
 {¶ 15} Years ago, legal insanity in Ohio could be based upon two distinct theories. One theory was the inability of a person to comprehend the wrongfulness of his or her actions. That theory has been maintained in Ohio law. The other theory was commonly referred to as the irresistible impulse test — the individual knew the activity was wrong but could not refrain from doing the wrong activity anyway. The Ohio legislature redefined legal insanity in Ohio to exclude situations involving irresistible impulse.
 {¶ 16} Under former Ohio law, appellant might have had a viable insanity defense. Appellant knew armed robbery was wrong, but he could not cope with the grief and turmoil in his life any further. He committed the robbery under circumstances where he would be caught and then shot by police, thereby ending his pain.
 {¶ 17} Appellant testified in his own defense at trial. He admitted a prior conviction for aggravated robbery and two separate convictions for trafficking in cocaine. He admitted owning a number of firearms, including a Kalashnikov AK-47 with a 50 round ammunition clip. He testified that he got the AK-47 "to kill police officers with it," after police killed his brother.
 {¶ 18} Appellant acknowledged owning the gun used in the armed robbery. He claimed he bought it to use in a suicide.
 {¶ 19} Shortly before the armed robbery, he would disappear for long periods of time, partly because he was depressed and did not trust himself around family members, including his own son. He suffered fits of crying which he could not control.
 {¶ 20} On the day of the robbery, he wanted to encounter the police, so he walked around with a gun in his hand. When no police responded, appellant entered a Rally's *Page 6 
restaurant and ordered food. He claimed he paid for it. When the manager of the restaurant saw the gun and thought a robbery was taking place, appellant took the money given to him and waited for police outside.
 {¶ 21} A police helicopter arrived and appellant claimed he tried to shoot at it. The gun clicked without firing a round and appellant claimed he "woke up" and realized he did not want to die. He panicked and fled.
 {¶ 22} Appellant explained that he knew he needed help with his mental health problems following his brother's death and was unable to get help. At no time in his testimony did he claim that he was so mentally ill that he did not know the difference between right and wrong or that he did not know robbing a Rally's restaurant was wrong.
 {¶ 23} The evidence in the record simply does not support a theory that appellant did not know committing an armed robbery was wrong. The record does not support an insanity defense as currently permitted under Ohio law. Compelling Dr. Ray to testify would have reinforced the fact that appellant was suffering from mental health problems but would have clearly demonstrated no correlation between the mental health problem and Ohio's version of legal insanity.
 {¶ 24} Dr. Ray's testimony would have also placed before the jury extensive information about appellant's long criminal history which was part of the basis for the diagnosis of Antisocial Personality Disorder. In addition, the testimony would have established the basis for the diagnosis of alcohol abuse, cannabis abuse, and cocaine abuse, including abuse of controlled substance on the day Mustafa Muhammad did the aggravated robbery. *Page 7 
 {¶ 25} The trial judge had no perfect options. Having Dr. Ray testify would have allowed testimony that appellant had been diagnosed with mental health problems, but the problem was not the kind which causes a person to fail to comprehend that armed robbery is wrong. Some of the problems would seem to the average person to be proof that appellant was a "bad" person who frequently committed crimes, including prior armed robberies and abuse of controlled substances. The trial court was well within its discretion to refuse to compel the testimony of Dr. Ray, which on balance would have been more harmful to appellant than helpful.
 {¶ 26} The portion of the first assignment of error that alleges error for refusing to compel Dr. Ray to testify is overruled.
 {¶ 27} Testimony of lay witnesses would not have shown that appellant did not know it was wrong to commit an armed robbery when he actually committed the armed robbery. Such testimony would be opinion testimony which is beyond their competence to testify. The trial court was within its discretion to exclude the testimony it excluded from lay witnesses, especially since appellant himself did not claim an inability to tell right from wrong.
 {¶ 28} The balance of the first assignment of error is overruled.
 {¶ 29} With no factual basis to support a jury verdict of not guilty by reason of insanity, the trial court was well within its discretion to refuse to submit a jury charge on insanity to the jury.
 {¶ 30} The second assignment of error is overruled. *Page 8 
 {¶ 31} On review, the first and second assignments of error are overruled. The third assignment of error is sustained and the fourth assignment of error is overruled as moot.
 {¶ 32} The judgment of the trial court awarding court costs is vacated and the case is remanded to the Franklin County Court of Common Pleas for further appropriate proceedings.
Judgment affirmed in part and reversed in part; case remanded withinstructions.
BROWN, J., concurs.
 SADLER, J., concurs in judgment only. *Page 1